UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:21-CV-00048-GFVT-EBA

JOHN HERNANDEZ, PLAINTIFF,

V. **MEMORANDUM OPINION & ORDER**

HARBOR FREIGHT TOOLS USA, INC., DEFENDANT.

*** *** *** ***

This is a products liability and personal injury action. Hernandez purchased a jack stand from Harbor Freight in 2015. In 2021, while using the jack stand to work on his Camaro, the stand allegedly collapsed, causing the Camaro to fall onto his head and upper body. During discovery, Hernandez served a set of requests for admissions, interrogatories, and production of documents on Harbor Freight. In response, Harbor Freight asked Hernandez if he'd agree to the entry of a protective order to safeguard its "confidential, commercially sensitive information" from public release. *See* [*Id.*]. The protective order wouldn't preclude the production of discovery, rather, it would permit Harbor Freight to make preliminary confidentiality designations on certain produced documents. *See* [*Id.* at pgs. 4–5] (discussing the proposed "Challenges to Designation as Confidential" section). If challenged, the confidentiality designation would be subject to judicial review.

Hernandez, while not opposed to the entry of an agreed protective order in principle, wanted more information on the substance—or at least categories—of the documents that Harbor Freight sought to designate as confidential prior to entry of an agreed protective order.

[*Id.* at pg. 3]. Harbor Freight eventually stated that it seeks to designate as confidential documents that fall into six categories:

1. Testing protocols;
2. Testing analysis;
3. Quality assurance testing and methods;
4. Documentation and internal correspondence that identifies the manufacturer and importer of Harbor Freight products;
5. Correspondence with the NHTSA regarding the jack stand recall; and
6. Documentation and internal correspondence surrounding how Harbor Freight investigated potential safety issues with the jack stands.

[*Id.* at pg. 20]. Documents falling within these categories, Harbor Freight says, include "commercially sensitive information regarding Harbor Freight's supply chain, contractual relationships, product sourcing, pricing, and advertising" that, if publicly released, will "negatively impact any future contract Harbor Freight has with suppliers." [*Id.* at pg. 18]. That said, Harbor Freight told Hernandez that it's prepared to promptly supplement its discovery responses and produce these commercially sensitive documents upon entry of a protective order. [*Id.*]; *see also* [R. 37 at pg. 1] (noting that "Harbor Freight can and will supplement its responses").

## ANALYSIS

There are two motions before the Court: Hernandez's motion to compel, [R. 32], and Harbor Freight's motion for a protective order, [R. 37]. Between the two, the Court is convinced

that the "primary issue requiring the Court's input" is whether the entry of a protective order is appropriate. [*Id.* at pg. 2]. So, the Court will consider Harbor Freight's motion first.

I

A

Rule 26(b)(1) provides that—unless otherwise limited—"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). This language is broadly construed to include "any matter that bears on, or that reasonably could lead to other matters that bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The scope of discovery, however, is not without limitation. It is "well established that the scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981) (citing *H. K. Porter Co., Inc. v. Goodyear Tire and Rubber Co.*, 536 F.2d 1115 (6th Cir. 1976)). As such, "[a] ruling by the trial court limiting or denying discovery will not be cause for reversal unless an abuse of discretion is shown." *Id.*

During discovery, "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending," and "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). "The burden of establishing good cause for a protective order rests with the movant," and to demonstrate good cause a movant "must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (quoting *Avrigan v. Hull*,118 F.R.D. 252, 254 (D. D.C. 1987)) (internal quotation marks omitted). "Courts should balance the parties' right to

discovery and the need for access to information with the burdens on the disclosing party and the need to prevent 'fishing expeditions.'" *Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012).

B

Here, Harbor Freight moves for the entry of a protective order to safeguard commercially sensitive information from public disclosure. [R. 37]. It's Harbor Freight's position that entry of a protective order is proper here to protect it from unwillingly disclosing trade secrets "or other confidential research, development, or commercial information." [*Id.* at pg. 5] (quoting FED. R. CIV. P. 26(c)(1)(G)). And, in Harbor Freight's view, its motion demonstrates good cause for entry of a protective order because it (1) adequately defines the documents, or categories of documents, that fall within its ambit and (2) articulates specific facts showing clearly defined and serious injury that will result from public disclosure. [*Id.*] (citing *Lexington Ins. Co. v. Ambassador Grp.*, No. 3:20-CV-330-BJB-LLK, 2021 WL 1647927, at *3 (W.D. Ky. Mar. 2, 2021); *Nix*, 11 F. App'x at 500)).

In response, Hernandez argues that Harbor Freight's motion for a protective order isn't supported by good cause because it merely asserts "vague and conclusory allegations of confidentiality and competitive harm," which are insufficient to justify a protective order's entry. [*Id.*] (quoting *Knowles*, 2020 WL 12968430, at *3). Rather, argues Hernandez, Harbor Freight was required to make "a particularized showing that the information sought is confidential" and provide "specific examples" of competitive harm. [*Id.*] (quoting *Knowles*, 2020 WL 12968430, at *3). In Hernandez's view, Harbor Freight "fail[ed] to specifically identify the documents or document categories it seeks to keep secret, [and] fail[ed] to articulate facts which show a clearly defined and serious injury that would result from the production of the requested documents." [*Id.* at pg. 6]

(referencing *Schrank v. Roller Die & Forming Co.*, No. 3:21-CV-598-RGJ-LLK, 2022 WL 256318, at *1–2 (W.D. Ky. Jan. 26, 2022)).

C

The parties are correct that adequately identifying the documents, or categories of documents, to be protected from public disclosure is required to justify entry of a protective order. *See Lexington Ins. Co.*, 2021 WL 1647927, at *3. The parties are also correct that the movant must articulate "specific facts that would show a clearly defined and serious injury would result from the disclosure of the documents and information sought." *Id.* When trade secrets are at issue, six factors typically guide a court's decision of whether to grant a protective order:

> (1) the extent to which the information is known outside of [the] business;
> (2) the extent to which it is known by employees and others involved in [the] business;
> (3) the extent of measures taken . . . to guard the secrecy of the information;
> (4) the value of the information to [the business] and to [its] competitors;
> (5) the amount of effort or money expended . . . in developing the information;
> (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Schrank*, 2022 WL 256318, at *1–2 (citing *Williams v. Baptist Healthcare Sys.*, No. 3:16-CV-236-CRS, 2018 WL 989546, at *2 (W.D. Ky. Feb. 20, 2018)); *Nash-Finch Co. and Super Food Servs., Inc. v. Casey's Foods, Inc.*, No. 6:15-CV-86-GFVT-HAI, 2016 WL 737903, at *2 (E.D. Ky. Feb. 23, 2016).

Harbor Freight argues that all six *Schrank* factors weigh in favor of entering a protective order:

> (1) The information contained in the documents Harbor Freight intends to produce is completely unknown to individuals outside of Harbor Freight (with the

exception of parties in any current or past jack stand litigation matters who have agreed to similar protective orders);

(2) The information is only known to employees of Harbor Freight and suppliers with whom Harbor Freight has commercial contracts with;

(3) Harbor Freight has required an agreed protective order from any and all parties it litigates with regarding the subject jacks stands due to the confidential, commercially sensitive information contained within its production. Further, this is the first time that a plaintiff's counsel has fought against a protective order for our internal proprietary commercial information. Additionally, outside of litigation, Harbor Freight goes to great lengths to maintain the security of its confidential information and protect against its disclosure outside the company;

(4) This information is of great value to Harbor Freight in maintaining its supply chains domestically and in foreign countries, especially in light of continued logistical issues;

(5) Harbor Freight has expended a vast amount of resources and money to establish relationships at home and abroad to effectively develop and sell a variety of products; and

(6) This commercial information is not easily acquired and cannot be duplicated by others, but for an improper release of internal confidential information.

[R. 37 at pg. 6]. In support, Harbor Freight tenders the Declaration of Jonathon LaForte, Harbor Freight's Manager of Automotive Compliance, who asserts that information concerning Harbor Freight's supply chain, risk assessment protocol, testing information, personnel information, and other commercial trade information is, indeed, confidential. *See* [R. 33-5].

However, LaForte offers nothing more than vague and conclusory statements about the documents' purported confidential nature and the speculative harm that might occur from their public disclosure. *See Williams*, 2018 WL 989546, at *3 ("Although Cooper's affidavit provides an explanation of harm that could occur, this type of harm is too speculative to constitute a 'clearly defined and serious injury.'"). This is especially troubling since Harbor Freight seems to contend that *all documents it will produce* are blanketly confidential, given that it refused to produce a *single* document responsive to Hernandez's requests for production. [R. 32 at pg. 7] ("Harbor Freight has refused to produce even one document so far in this litigation.").

Equally troubling is Harbor Freight's definition of Confidential Information in its proposed protective order:

> Confidential Information may include, but is not limited to, responses to discovery, the content of electrically stored information, tangible thing, writing, paper, model, photograph, film, videotape, transcript of oral testimony, whether printed, recorded or produced by hand or any other mechanical process. All documents, testimony, and other items designated as Confidential Information, and all copies, summaries, and reproductions of such information, are subject to this Protective Order.

[R. 33-8 at pg. 1]. Harbor Freight's proposed definition resembles that of the unsuccessful movants in *Lexington Ins. Co.*:

> Any documents, information, and materials that a party believes in good faith to be or contain confidential information, including but not limited to, personal financial information, state and federal tax returns and underlying documentation, trade secrets, proprietary, research design, development, financial, technical, marketing, planning, personal, or commercial information, as such terms are used in all applicable Federal Rules of Civil Procedure. "Confidential Information" shall not include materials that on their fact show that they have been published to the general public with the consent of the owner of such materials.

2021 WL 1647927, at *3. Both proposed definitions share "an unlimited scope," making it "unclear what exact documents would be protected." *Id.*

Harbor Freight's proposed protective order is anything but specific. [R. 33-8]. Harbor Freight doesn't clearly define the limited documents or document categories that should be deemed confidential. Nor does Harbor Freight articulate specific facts that show what clearly defined serious injury will result from disclosure, *Lexington Ins. Co.*, 2021 WL 1647927, at *3, aside from generally claiming that "disclosure of Confidential Information would necessarily result in serious harm to Harbor Freight." [R. 32-8 at pg. 1]; *see also* [R. 32-2 at pg. 18] (asserting via email that "any future contract Harbor Freight has with suppliers" will be "negatively impact[ed]"). But conclusory statements aren't enough. *Knowles*, 2020 WL 12968430, at *3.

Nonetheless, Harbor Freight does identify six *general* categories of documents that it intends to designate as confidential and compellingly argues that the six *Schrank* factors favor a protective order's entry. So, the Court will grant Harbor Freight's motion for entry of a protective order in a limited sense. Specifically, the Court will permit Harbor Freight to, in good faith, designate documents as confidential prior to producing them to Hernandez. Hernandez will enjoy ten days thereafter to challenge any confidentiality designation. After being notified of the challenge, Harbor Freight shall have ten days to resolve the dispute informally or to move for an Order confirming its confidential designation. Finally, in the event Harbor Freight improvidently produces a document without having first designated it as confidential, Harbor Freight shall have ten days to correct the error.

II

Next, the Court will discuss Hernandez's motion to compel, which takes aim at Harbor Freight's numerous objections, claims of privilege, and failure to produce a single document.

A

When a party refuses to provide information requested by another party, which is thought by the requesting party to be within the scope of Rule 26(b), then the requesting party may move the court to compel disclosure of the requested information. FED. R. CIV. P. 37(a)(3)(B). Motions to compel may be filed where a party has failed to (1) provide a mandatory disclosure; (2) answer or admit an interrogatory or request for admission; or (3) produce discoverable information, materials, or documents. *See generally* FED. R. CIV. P. 37. However, prior to moving to compel, a party must in good faith confer or attempt to confer with the opposing party "failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1).

Should the court determine the matters sought to be compelled fall within the scope of Rule 26, the motion shall be granted.

B

Here, Harbor Freight seems to admit that its discovery responses are deficient. [R. 37 at pg. 1] ("As Harbor Freight has stated on multiple occasions, Harbor Freight can and will supplement its responses[.] . . . However, Harbor Freight has consistently stated that such supplementation will require execution of a protective order.").[1] So, in the interests of judicial economy, the Court will forego a thorough analysis of Harbor Freight's responses and objections to Herandez's numerous requests. For now, the Court will grant Hernandez's motion to compel to the extent it requests Harbor Freight to supplement its discovery responses. In responding to Hernandez's discovery requests, it will be inappropriate for Harbor Freight to flatly refuse to produce documents responsive to the requests, as it has in the past.

Also, while Harbor Freight is entitled to assert claims of privilege when supplementing its discovery responses, it must ensure it establishes the privilege's existence when doing so. FED. R. CIV. P. 26(b)(5); *Osborn v. Griffin*, No. 11-CV-89-WOB-CJS, 2013 U.S. Dist. LEXIS 132613, at *6 (E.D. Ky. Sept. 17, 2013); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983) ("The burden of establishing the existence of the privilege rests with the person asserting it."). Generally, when a privilege is asserted, counsel is obligated to create and

[1] As Hernandez highlights in reply, "Harbor Freight has always been in possession of the documents that are responsive to Plaintiff's discovery requests[.]" [R. 36 at pg. 3]. Yet, when Hernandez served its first set of discovery requests on Harbor Freight (and after the parties couldn't reach an agreement as to a proposed protective order), Harbor Freight didn't move for a protective order to prevent the production of documents it perceived to be confidential or otherwise commercially sensitive. [R. 32 at pg. 2] ("Though it is a producing party's burden to seek a protective order under FRCP 26(c), Harbor Freight has not sought the relief it seeks from this Court."). Rather, Harbor Freight opted to deficiently respond to Hernandez's requests, and then condition future supplementation on the entry of an agreed protective order. [R.32 at pg. 2] ("Harbor Freight has withheld documents based upon their request the Plaintiff agree to a protective order."). That is wildly inappropriate, and effectively holds otherwise producible discovery for ransom.

produce a privilege log laying out the information required under Rule 26. *Mafcote, Inc. v. Federal Ins. Co.*, No. 3:09-CV-11-CRS, 2010 WL 1929900, at *2 (W.D. Ky. May 12, 2010). "This is done so that the Court can assess the claim of privilege and determine if it is a legitimate one." *Glowgower. v. Bybee-Fields*, No. 3:21-CV-12-EBA, 2022 WL 4042412, at *8 (E.D. Ky. Sept. 2, 2022). "In order to meet the requirements of the Federal Rules and justify a claim of privilege, . . . a privilege log must contain sufficient factual content to allow the court to reach the conclusion that each element of that privilege is fulfilled." *Mafcote*, 2010 WL 1929900, at *5. In *Mafcote*, the court explained that privilege logs should include:

> (a) The author(s) and all recipients (designated so as to be clear who is the sender and who the receiver), along with their capacities/roles/positions.
> (b) The document's date.
> (c) The purpose and subject matter of the document.
> (d) The nature of the privilege[] asserted, and why the particular document is believed to be privileged.

*Id.* at *6.

The Court mentions this now because Harbor Freight asserted claims of privilege in its first set of discovery responses and averred that it created a privilege log, but it seemingly never provided the privilege log to Hernandez. [R. 32 at pg. 7]; [R. 32-4 at pg. 22]. When Hernandez later asked Harbor Freight when he could expect the production of the privilege log (among other questions), Harbor Freight merely responded: "we believe that some of Plaintiff's issues with Harbor Freight's discovery responses have merit; however, we believe that many of your contended deficiencies are not accurate." [R. 32 at pg. 7]. Hernandez says, since that day, "Harbor Freight has not supplemented its discovery responses or elaborated further." [*Id.*].

## CONCLUSION

Hernandez and Harbor Freight reached an impasse during discovery. That impasse, in large part, turned on whether Harbor Freight was entitled to a protective order to shield its purportedly

confidential and commercially sensitive information from the public eye. Because Harbor Freight assumed it was entitled to such protection, Harbor Freight refused to produce a single document to Hernandez without entry of a protective order. Hernandez moved to compel discovery, and Harbor Freight moved for a protective order. Having fully considered the matters, and being otherwise sufficiently advised,

IT IS ORDERED that

(1) Defendant Harbor Freight's motion for a protective order [R. 37] is GRANTED IN PART as follows:

a. Whenever Harbor Freight produces a document or thing containing information deemed to be confidential, Harbor Freight shall designate the document or thing with "Confidential," "Produced Pursuant to Protective Order," or a similar statement. If a document or thing is designated "Confidential" or "Produced Pursuant to Protective Order" on its first page, the entire document or thing shall be deemed "Confidential" or "Produced Pursuant to Protective Order."

b. Confidential Information shall be maintained in confidence by all counsel in this matter and shall not be disclosed to any person except: (a) counsel, whether retained or in-house; (b) individuals certified by such counsel as employed by or assisting counsel in preparation for, or at the trial of, this action; (c) court reporters in the course of their professional duties; (d) persons noticed for depositions and trial witnesses, and (e) the Court and its officers, including the jury.

c. Any Confidential designation is subject to challenge. A party who contends that documents designated Confidential are not entitled to confidential treatment shall give written notice to the party who affixed the designation of the specific basis for

the challenge within ten days of receiving the discovery. The party who so designated the documents shall have ten days from service of the written notice to resolve the dispute without judicial intervention and, if it cannot, to move for an Order confirming the Confidential designation.

i. Notwithstanding any challenge to the designation of documents as Confidential, said material shall be treated as confidential unless and until the Court determines the material is not entitled to such a designation.

(2) Plaintiff John Hernandez's motion to compel [R. 32] is GRANTED insofar as it requests Harbor Freight to supplement its discovery responses.

Signed May 19, 2023.

**Signed By:**

***Edward B. Atkins*** EBA

**United States Magistrate Judge**